BRAZORIA COUNTY v. ROTHE et al.
(No. 5186.)

(Court of Civil Appeals of Texas. San Antonio. June 10, 1914. On Motion for Rehearing, July 1, 1914.)

1. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—POWER OF COUNTY COURT—DELEGATION OF AUTHORITY.

As the commissioners' court of a county is the trustee of school land owned by the county, it cannot delegate to others the authority to sell the land, for the sale of the land involves an exercise of discretion, and a trustee cannot delegate any duty involving the exercise of discretion.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

2. PUBLIC LANDS (§ 173*)—SALE OF SCHOOL LAND—RATIFICATION.

The commissioners' court of a county delegated to others the power to sell county land. Pursuant to this power the agents sold the land for an adequate consideration, only part of which was paid in cash. Thereafter, the remainder of the consideration having been paid, the court of county commissioners directed the treasurer to execute to the purchaser a release of the mortgage retained. *Held* that, while the first sale did not pass title because the court could not delegate to others its functions as trustee, there was a complete ratification of the acts of the unauthorized agents, and the county could not thereafter question the sale.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

Appeal from District Court, Medina County; R. H. Burney, Judge.

Action by Brazoria County against Louis Rothe and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Masterson & Rucks, W. T. Williams, and Louis J. Wilson, all of Angleton, for appellant. De Montel & Fly, of Hondo, Webb & Goeth, of San Antonio, and W. D. Love, of Uvalde, for appellees.

CARL, J. Brazoria county brought this suit, in the form of trespass to try title to one league and labor of land situated in Uvalde and Medina counties, against Louis Rothe, J. M. Kinkaid, W. B. Biggs, D. D. Groce, W. P. Locke, A. C. Rothe, and W. B. Locke. The survey is known as No. 906 in section No. 6 patented to the school commissioners of Brazoria county by the state of Texas on April 27, 1848.

Louis Rothe, J. M. Kinkaid, W. B. Biggs

───────────

and wife, Maggie Biggs, August Rothe, W. P. Locke, and W. B. Locke answered and filed a cross-action against Brazoria county for the recovery of the title to and possession of certain parts of the land in controversy. In addition to the usual pleas of not guilty, these defendants asserted title in this manner: That Brazoria county, acting by and through an order of the commissioners' court of said county, dated and entered November 16, 1876, sold said surveys Nos. 905 and 906 in Medina and Uvalde counties, through agents and commissioners duly appointed to make such sale, to one W. S. Thompson for the sum of $1,381.50 cash and $5,576 evidenced by four notes; that said price was a reasonable and fair market price of said land, and that the sale was duly approved by the commissioners' court of Brazoria county on March 23, 1877, by an order duly made and entered by said court; that conveyance of said land was made to said W. S. Thompson; that said W. S. Thompson paid to the county the full amount of the purchase money, and that thereafter the county of Brazoria, through its commissioners' court, by an order duly made and entered, directed and caused to be executed and delivered an instrument of writing whereby said county granted, bargained, sold, released, conveyed, ratified, and confirmed all of said land to said W. S. Thompson, his heirs and assigns; that said county of Brazoria ratified, recognized, and confirmed said sale by its acts and conduct ever since said sale was made, and used, appropriated, and accepted the benefits of the purchase money for more than 33 years. These defendants also impleaded John N. Warden and wife, Frances E. Warden, Lulu Thompson (afterwards Nutt), and her husband, Albert Nutt, John N. Garner, E. Gray and wife, Martha A. Gray, Ed Bell and wife, D. J. Bell, on their respective warranties.

John N. Garner and Albert Nutt and wife, Lulu Nutt, answered and adopted the answer and cross-petition of the defendants, Louis Rothe et al., in so far as the same is in answer to the plaintiff's suit, and further answered the cross-action of the defendants on warranties by demurrer, denial, and that said defendants had received the use and rents of said land.

In a supplemental petition Brazoria county answered the cross-petitions by demurrers, denial, and plea of not guilty, and denied specially that any valid and legal sale of the land or any part thereof had ever been made by the commissioners' court of Brazoria county, or that any legal or valid order was ever made by its commissioners' court authorizing the sale of said land or any part thereof, or that any valid and legal order was ever made approving a sale thereof to W. S. Thompson, or that the commissioners' court or any authorized officer or agent of Brazoria county ever received or accepted and paid into the permanent school fund of said county the sum of $1,381.50 in money alleged to have been paid by W. S. Thompson, or the proceeds of said notes, or that the permanent school fund of Brazoria county ever received any benefit from the alleged sale to Thompson, or that the commissioners' court or any other authorized officer or agent of the county has in any manner ratified or approved the sale of said land to Thompson. It was further pleaded that the county was not liable or bound to return or to tender to W. S. Thompson, his heirs or assigns, the $1,381.50 paid and the amounts of said notes in order to be entitled to judgment for title and possession of the land; but, if the court should decide that said sums should be returned from the permanent school fund of the county, that the judgment should be for plaintiff for the land on condition that Brazoria county pay the amount of money so received by the permanent school fund of Brazoria county into the registry of the court.

The suit was dismissed by plaintiff against defendant D. D. Grace, and Louis Rothe et al. dismiss their action against John N. Warden and Frances E. Warden. The trial was before the court from April 29, to May 1, 1913, and judgment was for defendants, excepting defendants on warranties.

### Findings of Fact.

(1) Survey No. 906 of the land in controversy was patented by the state to the school commissioners of Brazoria county on April 27, 1848; and survey No. 905 was patented to the school commissioners of that county on April 7, 1848.

(2) The commissioners' court of Brazoria county, on November 16, 1876, made and entered upon the minutes of that court the following order:

"State of Texas, County of Brazoria.

"Copy of decree made by commissioners' court of said county at a regular meeting of said court November 16/76.

"Whereas by virtue of section 6, article 7 of the Constitution of the state of Texas entitled 'Education—The Public Free Schools'—it is ordained that all lands heretofore granted to the several counties of this state are of a right the property of said counties, and it is therein among other things provided that 'each county may sell or dispose of its lands in whole or in part, in manner to be provided by the commissioners' court of the county,' and the proceeds thereof when sold shall be held by said counties alone as a trust for the benefit of the public schools therein; and whereas many counties are availing themselves of said provisions of the Constitution, and thereby disposing of their lands; and whereas the lands belonging to the county of Brazoria are unproductive and yielding no income to said county for the maintenance or support of the public free schools, and it is deemed advisable, judicious, and to the interest of said county that said lands should be sold or disposed of, in whole or in part, as is thereby authorized by said provision of said state Constitution: Therefore, be it resolved by the commissioners' court of Brazoria county, Texas, that Erwin N. Wilson and Andrew J. Burke, Jr., Esqrs., be and they are

hereby constituted and appointed commissioners to make sale and conveyance on behalf of said county of Brazoria, and on behalf of the commissioners' court of said county of Brazoria, Texas, of all lands heretofore granted to said county of Brazoria for education or schools; and said E. N. Wilson, and A. J. Burke, Jr., are hereby fully authorized and empowered to sell said lands in whole or in part, for cash or on time, taking notes for deferred payments payable to them as commissioners as aforesaid, secured by lien on the land for which said notes are given, at such price or prices as in their judgments they may deem reasonable and proper; and upon such sale or sales, good and valid deeds of conveyance of said land, to make and deliver in behalf of said county of Brazoria; and in behalf of said commissioners' court of said county of Brazoria, to the purchaser or purchasers thereof, and said Erwin N. Wilson and A. J. Burke, Jr., commissioners as aforesaid, be and are hereby fully authorized and empowered to employ a surveyor or surveyors, if they so desire, and determine, and to cause said lands to be surveyed and subdivided into tracts of such size and description as may seem to them advantageous; and said Erwin N. Wilson and A. J. Burke, Jr., be and are hereby authorized to sell said land, in whole or in part, to such person or persons for such price or prices, on such terms as they may determine upon, hereby giving and granting to said Erwin N. Wilson and A. J. Burke, Jr., full power and authority to exercise freely their discretion in the manner of said sales and the terms thereof, and all deeds executed and delivered by said Erwin N. Wilson and A. J. Burke, Jr., as commissioners as aforesaid, shall be binding, conclusive and effectual in behalf of said county of Brazoria, and upon the commissioners' court thereof, and it is expressly provided that all reasonable and necessary expenses incurred by said Erwin N. Wilson and Andrew J. Burke, Jr., including traveling expenses, surveyors' fees, investigation fees and all other incidental expenses connected therewith shall be reimbursed them by said county of Brazoria; and Erwin N. Wilson and Andrew J. Burke, Jr., shall be and are hereby authorized to receive and retain reasonable commission and compensation upon all sales made by them of said lands or any part thereof, said compensation to be not only a reasonable commission upon all cash received by them, but also a reasonable commission upon the amount of all note or notes taken by them, or received in part payment of said lands or any part thereof, and a special lien upon all cash payments, and upon all notes taken or received by them as aforesaid, is hereby granted to said Erwin N. Wilson and A. J. Burke, Jr., to secure their commissions, compensation and expenses aforesaid. A certified copy of this decree, recorded in each county in which said lands are situated, shall be deemed and held full evidence of the authority of said Erwin N. Wilson and A. J. Burke, Jr., in the premises; and all sales of said lands made by said Erwin N. Wilson and Andrew J. Burke, Jr., commissioners as aforesaid, and all acts of said commissioners in relation thereto, shall be and are hereby decreed valid, binding and conclusive on the commissioners' court of said county, and upon said county of Brazoria."

(3) On February 15, 1877, Erwin N. Wilson and Andrew J. Burke, Jr., as commissioners for Brazoria county, sold said land to W. S. Thompson for $6,907.50, paid and to be paid as follows: $1,381.50 "by draft on the house of Texas Banking & Insurance Company in the city of Galveston, which, when paid, shall be a receipt in full for said sum"; and four notes each for $1,381.50 due, respectively, on or before June 1, 1878, 1879, 1880,

and 1881. These notes drew interest at 10 per cent. per annum. The cash payment was made and the notes given were subsequently paid.

(4) The defendants in this cause, except those sued upon warranties, deraign title through the sale made to W. S. Thompson by the commissioners, Wilson and Burke, for Brazoria county.

(5) On March 23, 1877, the commissioners' court of Brazoria county made and entered the following order:

"The State of Texas, County of Brazoria.

"Be it remembered that on Friday, the 23d day of March, A. D. 1877, there was begun and holden in the town of Brazoria county.

"Present and presiding, Hon. E. N. Wilson, County Judge.

"Present, Hon. A. J. Burke, Com'r Prec't No. 2.

"Present, Hon. W. J. Bryan, Com'r Prec't No. 4.

"Present, Hon. Walter Wormly, Com'r Prec't No. 1.

"Present, T. T. Copes, Sheriff.

"Present, W. H. Sharp, County Clerk.

"It is ordered that the sale of two leagues and labors of Brazoria county school land, situated in Uvalde county, Texas, by A. J. Burke, Jr., and E. N. Wilson, as commissioners to make sale of said land for said county of Brazoria, to W. S. Thompson, of said county of Uvalde, according to the terms of a certain deed made, executed and delivered to said Thompson by said commissioners and the mortgage given by said Thompson to the county treasurer of Brazoria county to secure the deferred payments due on said land, is hereby in all things approved and confirmed and a good and valid title shall vest in the said Thompson, purchaser of said land as aforesaid, upon his compliance in full with the terms of said sale. And it appearing to the court that by the terms of said sale the said Thompson was to pay the sum of thirteen hundred and eighty-one $50/100$ ($1,381 $50/100$) dollars cash as the first installment and payment upon said land, which said sum was to be paid by draft for said amount on some house in Galveston, and when said draft was paid in full the same was to be considered a receipt in full for said first installment. And it appearing that the said Thompson had signed, executed and delivered his four certain promissory notes in writing each for the sum of thirteen hundred and eighty-one $50/100$ dollars, bearing date February 15/77, one payable on or before the first day of June, A. D. 1879, one payable on or before the first day of June, A. D. 1880, and one payable on or before the first day of June, A. D. 1881, to the county treasurer of said Brazoria county, Texas, at his office in said town and county, and each of said notes bearing ten per cent. interest from date until paid. And it further appearing to the court that the said Thompson instead of sending his draft for the sum of thirteen hundred and eighty-one $50/100$ ($1.381-$50/100$) dollars as expressed in the deed of conveyance of said land to said Thompson (which said deed was forwarded through the mails by said Commissioners Burke and Wilson to Wm. Burson, the agent of said Thompson to Uvalde, Uvalde county, Texas), the said Thompson forwarded to said commissioners at Brazoria a bill of exchange in favor of the treasurer of said Brazoria county, Texas, on the Texas Banking & Insurance Company of Galveston, Texas, No. 7185, for the sum of, to-wit, one thousand and thirty-six ($1,036.00) dollars, said bill of exchange bearing date San Antonio, March 16, 1877, leaving a balance due on said first installment by said Thompson of

three hundred and forty-five $^{50}/_{100}$ ($345.50) dollars: It is therefore ordered that the said commissioners, A. J. Burke, Jr., and E. N. Wilson, be, and they are hereby, allowed the sum of five hundred and ninety-five $^{37}/_{100}$ ($595 $^{37}/_{100}$) dollars as commissions for effecting said sale, and it is further ordered that drafts be issued by the clerk of this court, one in favor of the said A. J. Burke, Jr., for the sum of, to wit, two hundred and ninety-seven $^{68}/_{100}$ ($297 $^{68}/_{100}$) dollars, and one in favor of the said E. N. Wilson for the sum of, to wit, two hundred and ninety-seven $^{68}/_{100}$ ($297 $^{68}/_{100}$) dollars, on the county treasurer of said Brazoria county, payable out of the cash installment received from said Thompson for the purchase of said land. And it is ordered that the said commissioners, upon their delivering to the sa'd county treasurer the four notes of said Thompson and the bill of exchange for said sum of, to wit, $1,036 $^{00}/_{100}$, and the mortgage of said Thompson, said commissioners shall be, and are hereby released from any and all liability as said commissioners upon their filing with the clerk of this court the county treasurer's receipt for said bill of exchange and said notes, which said receipt shall be entered of record by said clerk. The said commissioners, however, are fully authorized and empowered to collect from said W. S. Thompson the balance due upon said first payment for the purchase of said land and receipt to him for the same and when the same shall have been collected, to pay it over to the county treasurer of said Brazoria county and take said treasurer's receipt for the same and file it with the clerk of this court, which receipt shall also be entered of record.

"Recorded in vol. D, pages 141 et seq., of the minutes of commissioners' court for Brazoria county, Texas."

(6) W. S. Thompson executed a mortgage on the land to secure the four notes on February 15, 1877.

(7) On August 19, 1899, the commissioners' court of Brazoria county, by an order of that date, authorized the county judge and county treasurer to execute a release of the deed of trust given by Thompson on these two surveys, and that order recites, "it appearing to the court that the deferred payment on said land has long since been made."

(8) On August 19, 1899, M. S. Munson, Jr., county judge, and H. A. Perry, county treasurer of Brazoria county, executed a release of the land from the Thompson deed of trust, and recites the sale of the land by Wilson and Burke, commissioners, to Thompson, under order of the commissioners' court of Brazoria county November 16, 1876. This release refers to the mortgage for description of the land and recites that "the notes secured by said mortgage having long since been paid off and discharged."

(9) W. H. Crafton was county treasurer at the time Thompson purchased the property, and on March 24, 1877, he acknowledged receipt from E. N. Wilson and A. J. Burke, Jr., of the draft for $1,036 and the four notes each for $1,381.50 executed by W. S. Thompson, stating that the money and notes belonged to the Brazoria county school fund, and refers to the mortgage given by Thompson.

(10) On January 30, 1882, Asa E. Stratton was appointed and qualified as county judge of Brazoria county, vice E. N. Wilson resigned.

## Case Presented.

[1, 2] Brazoria county could not delegate to Wilson and Burke the power to make sales of the school lands, because the commissioners' court is the trustee for the county public free school fund, and it is well settled that a trust cannot be delegated. This applies to any duty that requires the exercise of a discretion. It is contended that the deed made by the commissioners is void, and that the county can retain the money paid therefor and also recover the land. No offer is made to return what was paid for the land, and no contention is made that the land did not sell for a fair market value at the time it was sold. No bad faith is charged against Thompson, the purchaser, nor is it urged that the county did not receive the full proceeds of the notes and the cash payment, except as to the amount paid Wilson and Burke. The commissioners' court received the report of the sale, accepted it, entered a solemn order reciting the terms of the sale, and ratified and approved the same. The court had required and received a mortgage on the land from Thompson to secure the deferred payments, and subsequent thereto it made its order reciting the full and final payment of the notes and receipt of the cash and ordered its county judge and county treasurer to execute and deliver to Thompson, his heirs and assigns, a release of that mortgage, which was given to secure the notes.

It is claimed that Thompson was chargeable with notice of the want of authority in Wilson and Burke to make the deed they did make, so as to bind the court. This is carrying presumptions of law too far to assume that Thompson, one of those hardy frontiersmen who braved the drouths and hardships of border life 37 years ago and helped transform that country to its present high state of civilization, should be presumed to have known that which the commissioners' court of Brazoria county, headed by a lawyer, did not know, and which no one seems to have known until the case of Logan v. Stephens County, 98 Tex. 283, 83 S. W. 365, was decided.

Let us assume that the deed made by Wilson and Burke was voidable as originally entered into. The court was in possession of all the facts when they received the cash payment and knew just what the agents had done. The mortgage was required and the notes held until maturity when they were paid; and, after all that was done, the court, knowing full well that its treasury had Thompson's money for the benefit of Brazoria county children, authorized the execution of a release in which the court forever relinquished its interest in the land to the purchaser. When the sale, as made by these agents, was reported, and the county knew that an unauthorized deed had been made, it had the right to reject the same, for, "when an agent exceeds his authority, his principal may, upon learning the facts, accept or reject

the contract made. If he accepts them, his acceptance is a ratification of the previously unauthorized acts or conduct and makes them as valid and binding on him from the time they are done as if originally authorized." Gallup v. Liberty County, 57 Tex. Civ. App. 175, 122 S. W. 291. This commissioners' court said in plain words by a solemn order, after all the facts of the deal were known, that it ratified and approved the sale as made. Much is said about trustees and their sacred duty to protect and preserve the permanent free school fund from unlawful diversion or use; but the lamented Justice Neill has voiced the higher conception of law and good citizenship when he said in the Gallup Case, supra, "The education of the children of Texas does not demand the sacrifice of public integrity." And we fail to see how the schools of that county could consistently teach the principles of good faith, when the court which handles their funds refuses to keep faith with those dealing with it.

We hold that the sale as made was the subject of ratification by the court, and that the court did ratify that sale. Gallup v. Liberty County, 57 Tex. Civ. App. 175, 122 S. W. 291; Boydston v. Rockwall County, 86 Tex. 237, 24 S. W. 272; Brazoria County v. Padgett, 160 S. W. 1170.

The Padgett Case, supra, deals with almost the same situation as confronts us and arises out of the same appointment of agents by Brazoria county. In that case Mr. Justice Jenkins has written an opinion which meets our approval, and which covers nearly all of the questions involved in this case. We refrain from a fuller discussion of this case by referring to the opinion in the Padgett Case as meeting our views. We have examined all the assignments of error and overrule same.

The assignments raising questions not discussed in the authorities above cited would not require a reversal of the case, and the judgment is in all things affirmed.

### On Motion for Rehearing.

In addition to the findings of fact in the original opinion, let us state that on March 23, 1877, vouchers were issued on W. H. Crofton, county treasurer of Brazoria county, in favor of A. J. Burke, Jr., and E. N. Wilson, each for the sum of $296.68 for commissions on the sale of this land, and were payable out of the draft or cash payment for the land.

In the deed made by A. J. Burke, Jr., and E. N. Wilson, commissioners, to W. S. Thompson, is contained a reference to the order of the commissioners' court of Brazoria county which is dated November 16, 1876, and it is recited that same is attached to and made a part of the deed. But we are unable to say from the record that the deed contained such certified copy, because the record does not show it. In fact, the order does not appear except by reference.

With these additional findings of fact, the motion for rehearing is overruled.