JONES v. VELTMANN et al. (No. 5353.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 18, 1914. Rehearing Denied Dec. 16, 1914.)

1. COUNTIES (§ 182*)—BONDS—CUSTODY.

Under Rev. St. 1911, art. 632, providing that county and district bonds shall remain in the custody of the commissioners' court until sold to the highest bidder for cash at not less than par, an order of the commissioners' court transferring the custody of the bonds to the county attorney, and giving him unrestricted authority to sell, is void.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 285; Dec. Dig. § 182.*]

2. COUNTIES (§ 182*)—POWERS—DELEGATION TO AGENTS.

A county, being a government agency of limited authority, cannot, in the absence of statute conferring the power, give the custody of bonds issued by it to the county attorney with absolute discretion in him to make a sale, even though it might employ him to assist at such sale.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 285; Dec. Dig. § 182.*

For other definitions, see Words and Phrases, First and Second Series, County.]

3. DISTRICT AND PROSECUTING ATTORNEYS (§ 5*)—COUNTY ATTORNEY—COMPENSATION.

Under Const. art. 5, § 21, providing that a county attorney shall receive only the compensation prescribed by law, and Rev. St. art. 356a, requiring the county attorney to give information to county and precinct officers, an order of the commissioners' court employing for one year at the salary of $1,200 the county attorney to advise the county judge and the commissioners' court in preparing and issuing road bonds, and to assist in selling the bonds, is invalid, as an evident attempt to increase the compensation of the attorney for services which he was bound to render, especially where there was no evidence that the county attorney performed any services in connection with the bond issue, except to present the bonds to the attorney general for approval, and he was paid for that service.

[Ed. Note.—For other cases, see District and Prosecuting Attorneys, Cent. Dig. §§ 18–25; Dec. Dig. § 5.*]

4. COUNTIES (§ 182*)—DELEGATION OF POWERS—SALE OF BONDS—"SELL."

A contract by which the commissioners' court gave to the county attorney the custody of certain bonds, with authority to sell them for the best price obtainable, authorized the attorney, not merely to negotiate the sale, but to deliver the bonds and bind the sale, since the rule that power to sell land does not authorize an agent to convey, does not apply to a power to "sell" personal property, where possession is given to the agent, but such agent has full authority to consummate the sale,

and the contract is therefore void under Rev. St. 1911, art. 632, providing that the bonds shall remain in the custody of the commissioners' court until sold at auction for the best price obtainable at not less than their par value. [Citing Words and Phrases, Sell.]

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 285; Dec. Dig. § 182.*]

5. DISTRICT AND PROSECUTING ATTORNEYS (§ 5*) — COUNTY ATTORNEYS — COMPENSATION—RETAINER.

The commissioners' court has no authority to employ and compensate the county attorney at a yearly salary to defend suits that may be brought against the county, although it may employ him to represent it in a pending suit.

[Ed. Note.—For other cases, see District and Prosecuting Attorneys, Cent. Dig. §§ 18–25; Dec. Dig. § 5.*]

6. DISTRICT AND PROSECUTING ATTORNEYS (§ 5*)—COUNTY ATTORNEY—COMPENSATION—SERVICES PREVIOUSLY RENDERED.

Where the only services shown to have been rendered by the county attorney in connection with certain road bonds was the taking of the bonds to the capitol to be approved by the attorney general, for which the attorney had been paid, the subsequent order of the commissioners' court that he be paid $1,200 a year for services in connection with the bond issue is contrary to Const. art. 3, § 53, prohibiting extra compensation after the services have been performed.

[Ed. Note.—For other cases, see District and Prosecuting Attorneys, Cent. Dig. §§ 18–25; Dec. Dig. § 5.*]

7. DISTRICT AND PROSECUTING ATTORNEYS (§ 5*)—COUNTY ATTORNEYS—COMPENSATION—VOID ORDER.

The fact that the legal compensation of a county attorney affords no remuneration for the service required of him does not authorize the commissioners' court to pay him further compensation in violation of law or the courts to sustain an order for such compensation, but relief must be sought from the Legislature.

[Ed. Note.—For other cases, see District and Prosecuting Attorneys, Cent. Dig. §§ 18–25; Dec. Dig. § 5.*]

Appeal from District Court, Kinney County; W. C. Douglas, Judge.

Suit for injunction by John Jones against Joseph Veltmann and others. From a judgment denying the injunction, plaintiff appeals. Reversed and remanded, with instructions to grant the injunction.

E. A. Jones, of Brackettville, and Martin & Martin, of Uvalde, for appellant. Frank Lane, of Brackettville, and John J. Foster, of Del Rio, for appellees.

FLY, C. J. Appellant applied for and obtained a temporary injunction on April 1, 1914, against appellees, Joseph Veltmann, county judge, Commissioners Hans Peterson, A. M. Slater, N. L. Lewis, and Albert Schwander, county clerk H. E. Veltmann, and county attorney Frank Lane, restraining the payment to Frank Lane of $1,200, salary ordered to be paid him by the commissioners' court. An appeal was taken from the granting of the temporary injunction, and the judgment reversed and cause remanded, on account of the affidavit for the injunction being defective and insufficient. Lane v. Jones, 167 S.

W. 177. The cause was tried on April 18, 1914, by the court, and judgment rendered denying the injunction.

The facts show that appellant is a resident taxpayer of Kinney county, and owns both real and personal property in said county subject to taxation; that Joseph Veltmann is the county judge and together with the named commissioners constitute the commissioners' court of Kinney county; that H. E. Veltmann is the county clerk and Frank Lane the county attorney. The following order was made by the commissioners' court on February 11, 1914:

"The court after due consideration is of the opinion that the attorney's fee allowed the county attorney for legal services rendered to the court and county officials, to wit, $600 per annum payable in monthly installments of $50 per month, is inadequate for the amount of work such as the service requires. Therefore it is ordered by the court upon its own motion that the county attorney be and is allowed an attorney's fee of $1,200 per annum payable in monthly installments of $100 per month beginning on the 1st day of February, 1914, for legal services to be rendered to this court and the county officials as may be required, and the county clerk is hereby ordered to issue scrip of the county to the county attorney for the sum of $100 per month beginning on the 1st day of February, 1914, until further ordered by the court. It is further ordered by the court that all fees allowed to the county attorney in fines from criminal cases or prosecutions in the different justice courts of the county and county courts accruing since the 1st day of February, 1914, be collected by the constable or justice of the peace, sheriff or county judge and turned over to the county judge."

After the temporary injunction was granted, the commissioners' court, on the request of the county attorney, set aside the foregoing order, and made another, as follows:

"It is hereby ordered by the commissioners' court, at a regular term in regular session on this the 9th day of March, 1914, at 2:10 o'clock p. m.: That the county judge of Kinney county be authorized to secure the services of Frank Lane, attorney at law, to assist said county judge and commissioners' court in properly preparing the issue of the road bonds voted by a majority of the qualified property taxpaying voters of Kinney county on the 14th of November, 1913, to advise said county judge and commissioners' court in the proper preparation and issuing of said road bonds, and other legal matters in connection therewith; to sell or assist in selling said issue of bonds at the best price obtainable therefor; to do and perform such other services as shall be required of him in advising said commissioners' court and county judge with reference to said bond issue, and in reference to all other matters not contemplated or covered by the said Frank Lane's official duties as county attorney of Kinney county. That said employment by the county judge and commissioners' court to be for a period of one year from date of this order, said Frank Lane to receive as such compensation for said services to be performed, as above set forth, the sum of $1,200 payable $100 per month, for a period of 12 months. It being understood and agreed to by the said Frank Lane that, should he be instrumental in selling said bonds or finding a buyer therefor, said sum of $1,200 shall be full compensation for his services, and that no compensation shall be expected by or paid to said Frank Lane

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

for such services. That said county judge is hereby authorized and empowered to enter into a contract with the said Frank Lane embodying the terms of the above order securing his services as special counsel in all civil matters in connection with said bond issue, and other legal matters not contemplated or covered by the said Frank Lane's official duties as county attorney of Kinney county."

Commissioner Albert Schwander voted against both orders. Prior to the two orders hereinbefore copied, an allowance of $100 was made to defray the expenses of Lane to Austin to obtain approval of certain road bonds that had been voted by the people. It was required that he make an itemized account of his expenses, which he did, showing them to have been $32.80; but he failed to return the balance of $67.20, and retained the same. Other pertinent facts are found in the course of the opinion herein.

The court had before him, at the time he granted the temporary injunction, the order of March 9, 1914, upon which order a permanent injunction was afterwards refused. In the opinion of the court on granting the temporary injunction it is forcibly shown that at least a portion of the services sought to be paid for were required by law and that, if any part of the salary was authorized, the evidence failed to separate the legal from the illegal portions. The same state of case is here presented.

[1] The order of the commissioners' court of Kinney county, made on December 9, 1913, was:

"That Frank Lane be authorized to take and have charge of said bonds pending their investigation by the Attorney General and upon their approval shall have authority to negotiate their sale."

Article 632, Revised Statutes 1911, provides for examination of county and district bonds by the Attorney General and registry by the comptroller of public accounts, and further:

"Such bonds, when so issued, shall continue in the custody of, and under the control of the commissioners' court of the county in which they were issued, and shall be by said court sold to the highest and best bidder, for cash, either in whole or in parcels, at not less than their par value, and the purchase money therefor shall be placed in the county treasury of such county to the credit of the available road fund of such county, or of such political subdivision or defined district of such county, as the case may be."

It will be noted that the order of the commissioners' court not only placed the bonds in charge of Lane, but sought to give him absolute authority to sell them in any way and for any sum; no limitations of any kind being placed upon his powers in connection therewith. The court sought to confer on him authority that the court itself did not possess. There is no reference in the order to any legal limitations upon the sale, but untrammeled discretion is confided to him in the custody and sale of the bonds. Could such power be delegated to any one by the commissioners' court? We think not.

[2] It is a well-settled principle that the

171 S.W.—19.

public powers or trusts devolved upon a council or governing body of any subdivision of a state, to be exercised by it when and in such manner as it shall deem best, cannot be delegated to others. Dillon, Mun. Corp. § 244. No direct authority is found in the statutes for the employment of an agent to have the custody of and sell county or district bonds, and the principle should be always remembered that a public corporation is a governmental agency of very limited powers, hedged about with restrictions, and the authority to employ agents to assist in the performance of duties devolved on the governmental agency must be expressly given or strongly implied from the language of the statute. It has been held that power of a municipality to issue and sell bonds carries with it the implied power to secure such reasonable and necessary assistance as may be requisite to make an advantageous sale. Armstrong v. Ft. Edward, 159 N. Y. 315, 53 N. E. 1116; Slayton v. Rogers, 128 Ky. 106, 107 S. W. 696. In the case of Davis v. City of San Antonio (Civ. App.) 160 S. W. 1161, this court placed the authority of the city to employ agents to sell bonds on the language of the charter which permitted the employment of agents when "deemed necessary for the good government and interest of the city." But we are of opinion that the authority to sell lodged in a governmental agency would carry with it the authority to employ agents to assist in such sale, but at the same time it would not carry the authority to place the sale of the bonds at the absolute discretion of any one. Blair v. Waco, 75 Fed. 800, 21 C. C. A. 517. In the employment of such agencies, the most absolute good faith would be required, and no pretended agency to sell bonds could be made the basis of an increase of an officer's salary. There could have been no necessity for releasing the custody of the bonds to Frank Lane, in the very teeth of the statute, because, if his assistance in selling the bonds had been demanded, he could have given that assistance fully as well with the bonds in the custody provided by law.

The commissioners' court not only was guilty of an infraction of law in divesting itself of the custody of the bonds, but attempted to give Lane the absolute right of disposal of the bonds in any manner and for any price he might desire. It was sought to give him authority which could not be exercised by the court, and of course the order was invalid. Lane was charged with the knowledge that his employment was in violation of the plain terms of the statute, and, being void, it cannot form the basis of a recovery for services rendered. Dillon, Mun. Corp. § 895; Ft. Edward v. Fish, 156 N. Y. 363, 50 N. E. 973.

[3] The first order passed by the commissioners' court recited:

"That the attorney's fee allowed the county attorney for legal services rendered to the court

and county officials, to wit, $600 per month, is inadequate for the amount of work such as the service requires."

Provision was made in the order for raising the amount to $100. That order was made on February 11, 1914, and a temporary order restraining payment of the salary was issued on February 24, 1914. No doubt recognizing the illegality of the order, the county attorney, on March 9, 1914, requested the revocation of the order by the commissioners' court, and on the same day it was as recited in the order that the former order was "revoked, repealed, annulled and held for naught," but was followed by an order to employ the county attorney "to advise said county judge and commissioners' court in the proper preparation and issuing of said road bonds, and other legal matters in connection therewith; to sell or assist in selling said issue of bonds at the best price obtainable therefor; to do and perform such other services as shall be required of him in advising said commissioners' court and county judge with reference to said bond issue; and in reference to all other matters not contemplated or covered by said Frank Lane's official duties as county attorney of Kinney county." It was further provided that the employment should be for a year on a salary of $1,200, payable monthly at the rate of $100 per month. On December 9, 1913, the commissioners' court passed the following order:

"It is also ordered that Frank Lane be authorized to take and have charge of said bonds pending their investigation by the Attorney General and upon their approval shall have authority to negotiate their sale."

On the same date as the order quoted, a hundred dollars was appropriated to pay the county attorney's expenses to Austin to present the bonds to the Attorney General. The facts clearly indicate a determined purpose upon the part of the commissioners' court to evade and thwart the provisions of article 5, § 21, of the Constitution and the statutes of the state. The very services enumerated in the order as to advice to be given by the county attorney to the county judge and commissioners' court are provided for in article 356a. It was as much the duty of the county attorney to advise the county judge and commissioners' court in regard to properly preparing and issuing the road bonds as in regard to any other matter in which the county was interested, and it was his duty to advise them in regard to all county matters. There could be no county matters about which advice was required that was "not contemplated or covered" by his official duties as county attorney of Kinney county.

There was no testimony tending to show that the county attorney performed any services in connection with the bonds, except to present them to the Attorney General for approval, and he was given, under the guise of expenses, an extra hundred dollars for that service.

If the sums paid for advice, already provided for by law, could be separated from any imaginary services rendered in connection with the bonds, there is no testimony indicating that the county attorney rendered any services in selling the bonds if they were ever sold. Surely such services could not endure for 12 months. The testimony indubitably stamps the whole affair as a deliberate attempt to increase the salary of the county attorney for services required of him by the laws of the state. As said by the trial judge in his conclusions on granting the temporary injunction:

"It appears from said order that the commissioners' court is undertaking to pay said county attorney additional compensation for services which he is required, by virtue of his office, to perform. * * *"

If the judge was in possession of any more facts than on the hearing of the temporary injunction, the record fails to indicate them. The order passed to meet the judgment on granting the temporary injunction did not meet the exigencies or the demands of the law.

[4] In the order approving the contract made by the county judge with Lane it is recited that:

"The purpose and intent being to compensate said Frank Lane for his services in aiding this court to get the Kinney county road bonds approved by the Attorney General including trips to Austin in connection with the said bond issue, and to sell said bonds and protect the county against the payment of exorbitant charges for the sale of said bonds, and commissions and to defend any suit that might be filed to restrain the sale of said bonds or delay the sale of same by any taxpayers opposed to said bond issue."

The object appears to be, from that part of the order, not only to pay the county attorney for his advice and aid in selling the bonds, but to provide a retainer for his services in any case that might arise about the validity of the bonds. And if there was any doubt as to the authority to "negotiate," meaning the authority to sell the bonds, it is fully removed by the language of the contract and the order approving it.

Not only did the contract authorize Lane to sell the bonds, but, regardless of the requirement of the statute that the bonds be sold at par, the contract and last order authorized him "to sell said bonds at the best price obtainable therefor." Having possession of the bonds, he could deliver them and bind the "sale," if such delegated authority had been supported by law.

Appellees seek to apply the rule that a power to sell land does not give authority to convey, to a case in which an agent is placed in possession of personal property, but it does not apply, as one of the cases given under the word "sell," in Words and Phrases, to which we are referred, abundantly shows. Thacher v. Moors, 134 Mass. 163. The power to sell bonds by an agent in possession of them carried with it the power to deliver the

bonds and thereby fully consummate the sale. The commissioners' court could no more delegate that authority to an agent than it could delegate the power to sell and convey land to an agent, and that has been condemned by the Supreme Court and this court. Logan v. Stephens County, 98 Tex. 283, 83 S. W. 365; Brazoria County v. Rothe, 168 S. W. 70. As said by the Supreme Court in the Logan Case:

"It is not intended to limit the power, which has been granted by the Constitution to the commissioners' court, to manage, according to its discretion and to the best advantage, the lands held in trust for the public free schools; but simply to hold, as we do, that the commissioners' court cannot commit their discretion in making sale to an agent."

If the right to sell bonds, of which he had the possession, at the best price he could get for them, did not commit the discretion of the commissioners' court to the county attorney, such discretion could not be committed.

[5] It has been held that commissioners' courts may employ county attorneys to represent the county in pending suits, but we have seen no case in which a commissioners' court is given authority to employ an attorney and pay him a retainer of $100 a month for 12 months to defend suits that might possibly be instituted against the county. In the case of Lattimore v. Tarrant county, 124 S. W. 205, it was held that a contract to pay the county attorney for written advice was not inhibited by law; that, however, was before the passage of article 356a, which makes it one of the duties of the county attorney to give such advice, and for which he cannot receive additional remuneration.

If additional pay could be allowed county attorneys for advice given the commissioners' court, for the possible prosecution or defense of suits not in existence, and which may never arise, the Constitution and laws as to their salaries are nullities, and the salaries they might receive would be measured by the generosity or extravagance of the commissioners' court. Suits may possibly arise in any county, although they seldom occur, but such possibility would form the excuse for a large salary to any county attorney in the state, and the Constitution overridden.

[6] In this case, so far as the record discloses, no extra service whatever was rendered by the county attorney for the $1,200 voted him out of the county finances. If he gave any advice, if he defended any suits, if he sold any bonds, the statement of facts does not show it. All that the record shows that he did was to make a trip to Austin to present the bonds to the Attorney General for approval, and that was long before the contract was made with him, and he was given

$100 for that trip. In article 3, § 53, of the state Constitution, it is provided that no extra compensation shall be allowed any public officer, agent, servant, or contractor after service has been rendered, and yet in the face of that provision the commissioners' court voted the $1,200 "to recompense said Frank Lane for his services in aiding this court to get the Kinney county road bonds approved by the Attorney General, including trips to Austin in connection with the said bond issue," etc. The Constitution in positive terms provides, also:

"County attorneys shall receive as compensation only such fees, commissions, and perquisites as may be prescribed by law."

No such remuneration as was voted by the commissioners' court is provided by law, and the Constitution cannot be set aside by a subterfuge, but must be obeyed. If the bonds have been sold, it did not require a salary for 12 months to sell them, and if they have not been sold no service has been rendered. As said by this court:

"In special matters, and cases where the interest of a county may require the services of an attorney, its commissioners' court may contract for them. * * * But such court cannot make an order which will warrant the payment of the people's money to an attorney for services neither required nor performed." Grooms v. Atascosa County, 32 S. W. 188.

[7] As to the plea that the fees and emoluments of county attorneys being so meager "as to afford no fit remuneration for the office" in some counties, it is doubtless true, but that can offer no justification for a generous commissioners' court to relieve the necessities of the occasion by violating laws and disregarding the Constitution. There are few officers, executive, judicial, or legislative, that receive adequate remuneration for their services; but the only appeal is to the people and their Legislatures. Courts, however willing, have no power to raise salaries of county attorneys or any other officer unless so empowered by the Constitution or legislative act.

If the opinion of the majority of the Supreme Court in Dallas County v. Lively, 167 S. W. 219, be sound, still the facts of that case render it inapplicable in this case. The statute as to ex officio services of the county judge has no reference to a county attorney. Provision had been made for the salary of the county attorney before orders herein referred to were made.

The judgment is reversed, and the cause remanded to the district court with instructions to set aside the orders of the commissioners' court and issue a permanent injunction against appellees as prayed for in the petition.